UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

CARLOS ARZENO,

                                  Plaintiff,                           **COMPLAINT**
                     -against-                                         **JURY DEMAND**


CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS, and HANS VESTBERG,
                                            Defendants.
-------------------------------------------------------------------------X


## JURISDICTION AND VENUE

1.  This action arises from violations of the Americans with Disabilities Act of 1990(ADA), Title VII of the Civil Rights Act of 1964 ("TITLE VII"), Family and Medical Leave Act ("FMLA").

2.  This Court has original jurisdiction under 28 U.S.C. §1331. Federal Question, in relation to Plaintiff´s claims as these claims arise under the laws of the United States.

3.  Supplemental jurisdiction is invoked under 28 U.S.C. § 1367 for Plaintiff's claims under the New York Labor Law ("NYLL"), New York City Human Rights Law ("NYCHRL"), U.S. Code (U.S.C), and the Title 8 of the Administrative Code of the City of New York, as these claims form part of the same case or controversy.

4.  Venue is proper in the United States District Court of New York pursuant to 28 U.S.C. §1391, as Defendants conduct business in New York County, and a substantial part of the events or omissions giving rise to the claim occurred in New York, New York.


## THE PARTIES

**PLAINTIFF**

5.  Plaintiff CARLOS ARZENO, hereinafter ("Plaintiff") or ("Plaintiff Arzeno") or ("Mr. Arzeno"), resides at 6555 Broadway Apt. 5dBronx, NY 10471.

**DEFENDANTS**

6. CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS ("Defendant Verizon") or ("Verizon") is a corporation conducting business in the State of New York at 333 22 Arkay Dr, Hauppauge, NY 11788.

7. Defendant Verizon performed one or more of the following actions while Plaintiff worked for Defendant: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rate of Plaintiff, (4) maintain payroll records concerning the Plaintiff, or (5) institute work rules for the Plaintiff.

8. Defendant, HANS VESTBERG hereinafter ("Defendant Vestberg") or ("Mr.Vestberg") acts as the CEO of Defendant Verizon at 28 Liberty St., New York, NY 10005.

9. Defendant Vestberg performed one or more of the following actions while Plaintiff worked for Defendant: (1) hire the Plaintiff, (2) terminate the employment of the Plaintiff, (3) set the wage rate of Plaintiff, (4) maintain payroll records concerning the Plaintiff, or (5) institute work rules for the Plaintiff.

10. Defendant Verizon and Defendant Vestberg will hereby be referred to jointly as ("Defendants") unless otherwise noted.

## BACKGROUND FACTS

11. Defendant Verizon is a multinational corporation that provides communications, information, and entertainment services, including voice, data, and video products, to business and residential customers.

12. At all relevant times, Defendant Verizon employed at least 15 individuals.

13. On December 11, 2017, Defendants hired Plaintiff Carlos Arzeno as an Account Manager, responsible for overseeing operations at multiple Verizon Business locations in Manhattan and the Bronx.

14. Plaintiff managed two Verizon Business locations: 4250 Broadway, New York, NY 10033 (Manhattan) and 153 E. Fordham Rd., Bronx, NY 10468.

15. Defendants terminated Plaintiff's employment on November 14, 2023.

16. On December 16, 2024, Plaintiff received a Right-to-Sue letter from the U.S. Equal Employment Opportunity Commission (EEOC), confirming his right to pursue legal claims against Defendants. (Ex. 1_ 2024.12.16_Right to sue letter)

**PLAINTIFF ARZENO'S CAREGIVING RESPONSIBILITIES AND RETALIATION FOLLOWING HIS FMLA LEAVE**

17. Plaintiff Carlos Arzeno's brother, Marcos Arzeno ("Marcos"), has been diagnosed with major depressive disorder, a mental impairment that substantially limits his ability to work and care for himself. (Ex. 2_Marcos Arzeno's Medical Condition)

18. Due to the severity of his condition, Marcos' physician determined that he required constant supervision. Plaintiff Arzeno served as his primary caregiver, managing his well-being and medical needs.

19. On April 12, 2023, Plaintiff formally requested leave under the Family and Medical Leave Act ("FMLA") to care for his brother.

20. Defendants were fully aware of Plaintiff's role as his brother's caregiver, as Plaintiff provided medical documentation when requesting leave under the Family and Medical Leave Act ("FMLA").

21. Plaintiff's FMLA leave was approved through July 4, 2023. During this time, he managed Marcos' medical appointments, coordinated his psychiatric treatment, and provided emotional support. (Ex. 3_2024.07.04_FMLA Approval)

22. While Plaintiff was on leave, coworkers informed him that Godfrey Sinclair (hereinafter "Mr. Sinclair"), District Manager, had made disparaging comments about his brother, referring to him as "just crazy" and questioning the legitimacy of Plaintiff's leave.

23. Mr. Sinclair went even further mocked Plaintiff by sending a text message sarcastically asking if he "needed any soup or medicine," despite being fully aware of the serious nature of Plaintiff's FMLA leave.



Figure 1. Conversation with Mr. Sinclair.

24. Plaintiff's coworkers also reported that Mr. Sinclair made negative remarks about Plaintiff's work ethic and background, stating he was "abusing" FMLA leave and adding, "that is what Mexicans do."

25. Plaintiff returned to work on July 10, 2023. During a meeting with Verizon managers, Mr. Sinclair stated, in sum and substance, "It's only a matter of time before he [Plaintiff] gets fired."

26. Mr. Sinclair did not subject other employees to similar scrutiny when they took protected leave, nor did he make derogatory remarks about them to other managers. However, once Plaintiff returned, Mr. Sinclair began routinely visiting Plaintiff's assigned stores, refusing to engage with him, spreading negative statements about him to other managers—behavior that was not directed at similarly situated employees who took a protected leave.

27. Plaintiff knew from other coworkers that Mr. Sinclari was usually monitoring him through security cameras.

28. For example, during a one-on-one meeting with Junior Gonzalez, hereinafter (Mr. Gonzalez) a store representative at Plaintiff's Washington Heights location, Mr. Sinclair repeatedly disparaged Plaintiff, stating, "Be careful with this guy, he gets a lot of chargebacks." Mr. Gonzalez refuted this claim, affirming that Plaintiff was a responsible and effective employee.

29. Mr. Sinclair also told Mr. Gonzalez that Plaintiff was "lazy" and had taken FMLA leave simply to avoid working. Mr. Gonzalez rejected this characterization, clarifying that Plaintiff's brother had a severe mental illness and that Plaintiff had lawfully taken leave to provide necessary care.

30. Similarly, Crystal, a manager at the Bronx location where Plaintiff worked, informed Plaintiff that Mr. Sinclair was actively undermining him by spreading false rumors that his FMLA leave was fraudulent and questioning whether his brother was truly ill. Mr. Sinclair's actions created a hostile work environment that significantly impacted Plaintiff's employment conditions and ultimately led to his termination.

31. On or about August 18, 2023, Mr. Sinclair filed a verbal complaint against Plaintiff in Human Resources, alleging he had used another employee's tablet to make unauthorized sales. Plaintiff denied these accusations, which lacked evidence.

32. Prior to this, Plaintiff had been employed at Verizon for six years without ever receiving a write-up or disciplinary action. Throughout his tenure, he consistently demonstrated a strong work ethic, diligently fulfilled all assigned responsibilities, and maintained positive, professional relationships with her colleagues.

33. Plaintiff never encountered issues with his coworkers and had no record of disciplinary actions, write-ups, or performance-related complaints during her employment with Defendants.

34. On September 4, 2023, Plaintiff filed a formal complaint with Verizon's Human Resources department, reporting discriminatory treatment based on his use of FMLA leave and his association with his disabled brother against Mr. Sinclair. Later that same day, Shane Webb, an HR Business Partner, reached out to Mr. Arzeno to confirm his appointment for September 8, 2023, at 1:00 PM.



Figure 2. 2023.09.04_Email of HR about the meeting_

35. On September 8, 2023, Plaintiff met with HR representatives Shane Webb and Teri Lassiter to formally report the discrimination and harassment he had endured from District Manager Godfrey Sinclair. During the meeting, Plaintiff provided specific examples of Sinclair's misconduct, including derogatory remarks about his FMLA leave, racial comments, and efforts to undermine his employment. Plaintiff also submitted supporting evidence and identified witnesses who could corroborate his claims.

36. However, rather than taking meaningful action, HR representatives dismissed Plaintiff's concerns, failed to acknowledge the severity of the allegations, and made no effort to investigate Sinclair's conduct in a timely or thorough manner. They offered only a vague assurance that they would "look into it" and failed to implement any immediate remedial measures to prevent further retaliation.

37. Notably, despite Plaintiff's detailed complaint and supporting evidence, Defendants took no disciplinary action against Sinclair. Instead, within two weeks of the meeting, Defendants retaliated against Plaintiff by suspending him on pretextual allegations—further evidencing a coordinated effort to remove him from the company in response to his complaint.

38. Within weeks of filing his complaint, Defendants suspended Plaintiff on pretextual allegations of misconduct that had never previously been raised in his employment history.

39. As a result of his suspension, Plaintiff was unable to earn sales commissions that he would have otherwise received. Since suspended employees were only entitled to their base salary, Plaintiff lost a substantial portion of his expected earnings. This deprivation of commissions, which formed a significant part of his overall compensation, directly affected his financial stability and hindered his professional advancement.

40. On November 14, 2023, Teri Lassiter ("Ms. Lassiter"), an HR consultant for Verizon, called Mr. Arzeno and terminated Plaintiff's employment, after the call, Plaintiff asked Ms. Lassiter to confirm him the date of his termination, where she confirms that the termination was made on November 14, 2023. (Ex. 4_2023.11.14_Termination Letter)

41. Verizon cited the following reasons for Plaintiff's termination: (1) "Failure to provide access to company devices" and (2) "Failure to provide full, accurate, and truthful information during a company investigation into suspected fraud."

42. Defendants claimed Plaintiff was uncooperative because he initially provided an incorrect password during an internal investigation. However, on October 20, 2023, Plaintiff emailed Christopher Coutts, a Verizon investigator, with the correct password. Plaintiff had not used his phone in months and had mistakenly provided the wrong code at first, but he corrected the error promptly. (Ex. 5_2023.10.20_Email Providing Correct Password)

43. Plaintiff fully complied with Verizon's requests and never refused to provide access to company devices. The stated reasons for his termination were pretextual, serving as retaliation for his use of FMLA leave and his internal complaint against Mr. Sinclair.

44. Plaintiff's termination occurred shortly after he had complained about discrimination, further evidencing that Defendants used a fabricated investigation as pretext for retaliation.

45. Before taking FMLA leave, Plaintiff had never been accused of violating company policy. After his return, Defendants initiated a sudden and unfounded investigation into alleged misconduct.

46. Defendants initially justified Plaintiff's termination by alleging he failed to provide access to company devices. However, when Plaintiff complied and provided the correct password, Defendants shifted their reasoning, instead claiming he had been dishonest during the investigation.

47. Multiple employees confirmed that Mr. Sinclair had made comments predicting Plaintiff would be fired, further suggesting a pre-determined effort to remove him from the company.

48. Defendants took no disciplinary action against Mr. Sinclair for making discriminatory comments, despite multiple complaints from Plaintiff and corroborating witnesses.

**DEFENDANTS' FALSE AND MISLEADING STATEMENTS TO THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)**

49. In December 13, 2024, Defendants submitted their response to the Charge of Discrimination filed with the EEOC under Charge No. 520-2024-07951. (Ex. 6_2024.12.13 Defendants' Position Statement)

50. A review of Defendants' position statement reveals significant inconsistencies and misrepresentations regarding the reasons for Plaintiff's termination, the discriminatory treatment he faced upon returning from FMLA leave, and the retaliatory actions taken against him following his internal complaint.

51. Defendant Verizon falsely asserts that Plaintiff was terminated solely for failing to cooperate with an internal investigation. However, prior to his termination, Plaintiff had an unblemished six-year employment record with no history of disciplinary actions. The allegations leading to his termination surfaced only after he engaged in protected activity—taking FMLA leave and filing a complaint about racial discrimination and harassment by District Manager Godfrey Sinclair.

52. Defendants further claim that Sinclair played no role in Plaintiff's termination. This assertion is directly contradicted by multiple employees who confirmed that Sinclair repeatedly made derogatory remarks about Plaintiff's FMLA leave and actively sought to undermine his standing at the company. Sinclair's statement that it was "only a matter of time before [Plaintiff] gets fired" demonstrates premeditated intent to remove him from his position.

53. Defendants attempt to justify Plaintiff's termination by alleging misconduct related to an internal fraud investigation. However, this justification is demonstrably false. Plaintiff fully cooperated with the investigation and promptly provided access to his company device after initially submitting an incorrect password. Defendants' failure to explain why a long-term employee with no prior infractions was suddenly targeted for a fraud investigation immediately after returning from protected leave further supports the inference of pretext. (Ex. 5_2023.10.20 Email Providing Correct Password)

54. Verizon's position statement also ignores corroborated evidence that Sinclair engaged in a pattern of discriminatory and retaliatory conduct. Employees reported that Sinclair

spread false accusations about Plaintiff's work ethic and FMLA leave, including racist remarks suggesting that Plaintiff was "lazy" and "abusing" the system. Despite multiple reports of Sinclair's discriminatory conduct, Defendants took no disciplinary action against him. Instead, they targeted Plaintiff for termination.

55. Although Verizon claims to maintain strong anti-discrimination and anti-retaliation policies, its actions directly contradict these principles. Rather than addressing Sinclair's documented pattern of misconduct, Verizon responded to Plaintiff's internal complaint by swiftly suspending him, depriving him of earned commissions, and ultimately terminating him—all hallmarks of unlawful retaliation.

56. Defendants' justification for Plaintiff's termination has repeatedly shifted. Initially, they cited a failure to provide access to company devices. When this explanation proved insufficient, they changed their reasoning, instead alleging that Plaintiff had failed to provide "truthful" information during an investigation. Such shifting explanations are indicative of pretext and an attempt to conceal the true, retaliatory motive behind Plaintiff's termination.

57. The inconsistencies in Verizon's stated reasons for Plaintiff's termination, coupled with its failure to discipline Sinclair for documented discriminatory behavior, make clear that Plaintiff's dismissal was not based on legitimate business reasons. Rather, it was a direct and unlawful retaliation against Plaintiff for exercising his rights under the FMLA and for opposing workplace discrimination.

58. Verizon's deliberate misrepresentations, tolerance of managerial misconduct, and shifting justifications for termination further support the conclusion that Plaintiff was terminated under false pretenses in an effort to suppress his claims and deter future complaints of discrimination.

## FIRST CAUSE OF ACTION
### (Associational Discrimination-ADA)
Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

59. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

60. As set forth herein, the Defendants took an adverse employment action against the Plaintiff based on his association with a disabled individual, his brother.

61. Mr. Arzeno's brother, Marcos Arzeno ("Marcos"), suffers from major depressive disorder. The symptoms of major depressive disorder include auditory hallucinations, paranoid ideas, and intense feelings of isolation.

62. Marcos' condition has a mental impairment that substantially limited his ability to work and to care for himself, and Plaintiff took on the role of a caretaker for him.

63. Under the Americans with Disabilities Act, the Plaintiff is entitled to remain free from discriminatory adverse employment practices based on the protected characteristic of the disability of a family member.

64. Plaintiff suffered harm because of the Defendants' unlawful discriminatory conduct, including Mr. Sinclair's discriminatory comments about him, and Mr. Sinclair's subsequent targeting of Plaintiff upon his return to work, resulting in Plaintiff's termination.

65. As such, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages; reasonable attorney's fees, expenses, and the costs of the action; pre-judgment and post-judgment interest from Defendants.

## SECOND CAUSE OF ACTION
(Hostile work environment -ADA)
Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

66. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

67. The anti-harassment provisions of the ADA and its supporting regulations apply to the Defendants and protect the Plaintiff.

68. Under the ADA, the Plaintiff was entitled to remain free from a workplace permeated with severe or pervasive discriminatory intimidation, ridicule, and insult.

69. The Plaintiff experienced a series of adverse employment actions after Defendants became aware of his caretaking responsibilities for his brother.

70. Plaintiff was penalized for taking protected absences for his brother. For example, Plaintiff's manager, Mr. Sinclair, disparaged Plaintiff, alleging he was not actually taking care of his brother. Mr. Sinclair also made numerous comments about Plaintiff fraudulently taking FMLA leave to Plaintiff's managers and coworkers.

71. Plaintiff was falsely accused of making fraudulent sales and with no evidence, suspended for this allegation.

72. Defendants failed to mitigate Plaintiff's concerns that he was being targeted despite complaining about the above hostile actions by his manager and coworkers.

73. Plaintiff suffered harm because of the Defendants' unlawful Discriminatory conduct as set forth herein.

74. As such, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages; reasonable attorney's fees, expenses, and the costs of the action; pre-judgment and post-judgment interest from Defendants.

### THIRD CAUSE OF ACTION
(FMLA Interference)
(29 U.S.C.A. § 2615)

75. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

76. Under the FMLA, 29 U.S.C.A. § 2615, it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this subchapter.

77. Mr. Arzeno's brother, Marcos Arzeno ("Marcos"), suffers from major depressive disorder. The symptoms of major depressive disorder include auditory hallucinations, paranoid ideas, and intense feelings of isolation.

78. As a result of Marcos' major depressive disorder, his doctor ordered that he be under supervision for personal care.

79. Mr. Arzeno was responsible for taking care of his brother during this period.

80. Mr. Arzeno utilized leave under the Family Medical Leave Act ("FMLA") to care for his brother. The leave was approved until July 4, 2023.

81. Mr. Arzeno was terminated after returning from FMLA leave after Mr. Sinclair made numerous comments of his disapproval about Plaintiff utilizing FMLA leave and disparaged Plaintiff on the grounds that he was lazy and that Plaintiff's brother was not actually ill.

82. Plaintiff suffered harm because of the Defendants' unlawful retaliatory and discriminatory conduct as set forth herein.

83. Due to Defendants violations, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages, reasonable attorney's fees, expenses, and the costs of the action, and pre-judgment and post-judgment interest from the Defendants.

**FOURTH CAUSE OF ACTION**
(FMLA Discrimination/Retaliation)
(29 U.S.C.A. § 2615)

84. Every fact alleged herein is repeated, re-alleged and incorporated as though fully set forth herein.

85. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for utilizing FMLA leave.

86. Upon an employee's return form FMLA leave, they are entitled to the same or similar job, pay, and terms and conditions of employment they enjoyed prior to taking said leave.

87. Plaintiff was harassed while he was on leave by Mr. Sinclair, as he sent text messages mocking Plaintiff, asking him if he needed medication and soup.

88. Moreover, Mr. Sinclair made numerous discriminatory comments about Plaintiff taking FMLA leave, implying that Mr. Arzeno's brother was not actually suffering from a mental illness, and that Plaintiff was therefore fraudulently taking leave.

89. Two months after returning from FMLA leave, Plaintiff was suspended on pretextual allegations of fraud, and ultimately terminated in November of 2024.

90. Plaintiff suffered harm because of the Defendants unlawful retaliatory and discriminatory conduct, including her termination as set forth herein.

91. Due to Defendants violations, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages, reasonable attorney's fees, expenses, and the costs of the action, and pre-judgment and post-judgment interest from the Defendants.

**FIFTH CAUSE OF ACTION**
(Discrimination)
(N.Y. Exec. Law §296-Disability) (N.Y. Comp. Codes R. & Regs. tit. 9, § 466.14)

92. Every fact alleged herein is repeated, re-alleged and incorporated as though fully set forth herein.

93. As set forth herein, the Defendants took an adverse employment action against Plaintiff based on Plaintiff's known association with his brother Marco, who was disabled as defined under the NYHRL.

94. Under the NYHRL, the term "unlawful discriminatory practice" is construed to prohibit discrimination against an individual because of that individual's known relationship or

95. association with a member or members of a protected category covered under the relevant provisions of the Human Rights Law.

96. As set forth herein, the Defendants took an adverse employment action against the Plaintiff based on his association with a disabled individual, his brother.

97. Mr. Arzeno's brother, Marcos Arzeno ("Marcos") suffers from major depressive disorder. The symptoms of major depressive disorder include auditory hallucinations, paranoid ideas, and intense feelings of isolation.

98. Marcos' condition was a mental impairment that substantially limited his ability to work, and to care for himself, and Plaintiff took on the role of a caretaker for Marcos.

99. Under the NYHRL, Plaintiff was entitled to remain free from discriminatory adverse employment practices based on the protected characteristic of the disability of a family member.

100. Plaintiff suffered harm because of the Defendants unlawful discriminatory conduct, including Mr. Sinclair's discriminatory comments about Plaintiff, and Mr. Sinclair's subsequent targeting of Plaintiff upon his return to work, resulting in Plaintiff's termination.

101. As such, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages; reasonable attorney's fees, expenses, and the costs of the action; pre-judgment and post-judgment interest from Defendants.

### SIXTH CAUSE OF ACTION
(Retaliation-NYHRL-Disability)
New York Exec. Law §296 et. seq.

102. All allegations are hereby repealed, re-alleged, and reincorporated as though fully set forth herein.

103. The anti-retaliation protections of the NYHRL and its supporting regulations apply to the Defendants and protect the Plaintiff.

104. Under the NYHRL, an employer is prohibited from retaliating against an employee for opposing conduct protected by the NYHRL. Plaintiff engaged in a protected activity by complaining to Defendants HR personnel that he felt he was being targeted in a discriminatory manner.

105. As described herein, Defendants retaliated against Plaintiff when Defendants took an adverse employment action against Plaintiff by suspending his employment and subsequently terminated Plaintiff.

106. By Defendants knowing or intentional retaliation against the Plaintiff, the Defendants violated NYHRL and the supporting regulations.

107. Due to Defendants violations, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages, reasonable attorney's fees, expenses, and the costs of the action, pre-judgment and post-judgment interest from the Defendants.

### SEVENTH CAUSE OF ACTION
(Harassment-Disability)
New York Exec. Law §296 et. seq.

108. Every fact alleged herein is repeated, re-alleged and incorporated as though fully set forth herein.

109. Under the NYHRL, it is unlawful for an employer to treat an employee less well based on their membership in a protected class. The NYHRL considers an employee's known association with a disabled person a protected class.

110. As set forth herein, the Defendants treated an employee "less well" as Mr. Sinclair made discriminatory comments about Plaintiff throughout his leave, implying Mr. Arzeno

111. was taking the leave on false pretenses and alleging that Mr. Arzeno's brother was not mentally ill.

112. Defendants suspended Plaintiff on false pretenses, alleging he was making fraudulent sales with no evidence to substantiate their claim.

113. Mr. Arzeno complained to Defendants HR personnel, however, the failed to adequately investigate and mitigate Mr. Arzeno's complaints.

114. By failing to create a work environment that was free from hostile attitudes and behaviors directed at Plaintiff's protected characteristics, the Defendants took an adverse employment action against Plaintiff in violation of the New York Human Rights Law.

115. Plaintiff suffered harm because of the Defendants' unlawful discriminatory conduct as set forth herein.

116. Due to Defendants violations, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages, reasonable attorney's fees, expenses, and the costs of the action, pre-judgment and post-judgment interest from the Defendants.

**EIGHTH CAUSE OF ACTION**
(Aiding and Abetting-Discrimination)
(NYHRL)

117. Every fact alleged herein is repeated, re-alleged and incorporated as though fully set forth herein.

118. N.Y. Executive Law § 296(6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

119. Defendants Sinclair engaged in an unlawful discriminatory practice by knowingly and/or recklessly aiding, abetting, compelling, coercing and/or actively participating in the unlawful, discriminatory, and retaliatory conduct as stated herein.

120. As a direct and proximate result of Sinclair's unlawful discrimination against Plaintiff, Mr. Arzeno suffered, and continues to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

121. As a direct and proximate result of The Individual Defendants unlawful discrimination and retaliation against Plaintiff, in violation of the N.Y. Executive Law § 296(6), Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

122. Plaintiff Arzeno hereby makes a claim against Defendants Sinclair under all applicable paragraphs of N.Y. Executive Law § 296.

123. Plaintiff suffered harm because of the Defendants unlawful discriminatory conduct as set forth herein.

124. Due to Defendants violations, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages, reasonable attorney's fees, expenses, and the costs of the action, pre-judgement and post-judgment interest from the Defendants.

## NINTH CAUSE OF ACTION
(Discrimination-NYCHRL)

N.Y. Code § 8-101

125. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

126. As set forth herein, the Defendants took an adverse employment action against Plaintiff based on Plaintiff's known association with his brother, who was disabled as defined under the NYCRL.

127. Under the NYCRL, the term "unlawful discriminatory practice" is construed to prohibit discrimination against an individual because of that individual's known relationship or association with a member or members of a protected category covered under the relevant provisions of the Human Rights Law.

128. Plaintiff suffered harm because of the Defendants unlawful discriminatory conduct as set forth herein. As such, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages; reasonable attorney's fees, expenses, and the costs of the action; pre-judgment and post-judgment interest from Defendants.

## TENTH CAUSE OF ACTION
(Retaliation-Disability-NYCHRL)

N.Y. Code § 8-101

129. All allegations are hereby repealed, re-alleged, and reincorporated as though fully set forth herein.

130. The anti-retaliation protections of the NYCRL and its supporting regulations apply to the Defendants and protect the Plaintiff.

131. Under the NYCRL, an employer is prohibited from retaliating against an employee for opposing conduct protected by the NYCRL.

132. Plaintiff engaged in numerous actions constituting protected activity, including taking protected leave and complaining about harassment to Human Resources.

133. Defendants retaliated against Plaintiff by terminating Plaintiff.

134. By Defendants knowing or intentional retaliation against the Plaintiff, the Defendants violated NYCRL and the supporting regulations.

135. Due to Defendants violations, Plaintiff is entitled to recover lost wages, compensatory damages, punitive damages, reasonable attorney's fees, expenses, and the costs of the action, pre-judgment and post-judgment interest from the Defendants.

## ELEVENTH CAUSE OF ACTION
(Aiding and Abetting-Discrimination) (NYCHRL)

136. Every fact alleged herein is repeated, re-alleged, and incorporated as though fully set forth herein.

137. The New York City Administrative Code Title 8, § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

138. Defendants Sinclair engaged in an unlawful discriminatory practice, in violation of New York City Administrative Code Title 8, § 8-107(6) by knowingly and/or recklessly aiding, abetting, compelling, inciting, coercing and/or actively participating in the unlawful, discriminatory, and retaliatory conduct as stated herein.

139. As a direct and proximate result, Plaintiff Arzeno suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and, benefits for which he is entitled to an award of damages.

140. As a direct and proximate result, Plaintiff Arzeno suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of damages.

141. Defendants Sinclair's unlawful actions constitute malicious, willful, and wanton violations of the New York City Human Rights Law for which Plaintiff Arzeno is entitled to an award of punitive damages.

142. Plaintiff hereby makes a claim against Defendants Sinclair under all applicable paragraphs of New York City Administrative Code Title 8.

143. As a direct and proximate result of Defendants Sinclair's unlawful and discriminatory conduct, in violation of the Admin. Code of the City of N.Y., § 8-101, et seq., Plaintiff Arzeno is entitled to an award of compensatory damages in an amount to be determined at trial.

144. As a direct and proximate result of Mr. Sinclair's unlawful and discriminatory conduct, in violation of the Admin. Code of the City of N.Y., § 8-101, et seq., Plaintiff Arzeno is entitled to an award of punitive damages in an amount to be determined at trial.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Fed. R. Civ. P., Plaintiff demands a trial by jury on all questions of fact raised by this Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks all available remedies available under all causes of action listed herein in this Plaintiff and any and all remedies that the Court deems just and proper. Including but not limited to All lost wages and benefits, front pay, pre-judgment and post-judgment interest; liquidated damages, punitive damages, statutory penalties; emotional distress damages; recovery of reasonable costs, attorney fees, and expenses; equitable relief, and any other relief considered just and proper.

Dated: White Plains, New York

March 14, 2025

EL-HAG & ASSOCIATES, PC

By:_____*Jordan El-Hag*_____
Jordan El-Hag, Esq.
777 Westchester Ave., Ste. 101
White Plains, NY 10604
(914) 218-6190 (o)
Jordan@elhaglaw.com